1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK BAKER,                                No.  2:24-cv-02558-DC-SCR

12                    Plaintiff,

13          v.                                  FINDINGS & RECOMMENDATIONS

14   UNITED STATES FOOD and DRUG
     ADMINISTRATION, et al.,
15
                     Defendants.
16

17          Plaintiff Mark Baker is an advocate for regulation of LED vehicle headlights and sues the

18   government agencies allegedly responsible for such regulation.  Plaintiff is proceeding pro se in

19   this matter, which is referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C.

20   § 636(b)(1).  Before the Court is Defendants' motion to dismiss Plaintiff's complaint—which

21   contains two causes of action—pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6) (ECF

22   No. 9).  Opposition and reply briefs were filed.  ECF Nos. 10 & 14. The motion was submitted to

23   the Court without oral argument.

24          The Court now recommends that the motion be GRANTED.  The Court finds that Plaintiff

25   has standing to pursue his first cause of action, which concerns a statutory requirement that the

26   Secretary of Health and Human Services ("Secretary") confer with other agencies about

27   regulation of radiation-emitting devices, but fails to state a claim on which relief can be granted

28   for that cause of action.  The Court also finds that Plaintiff lacks standing to pursue his second

1    cause of action, which concerns a statutory requirement that the Secretary establish a standards

2    committee on radiation-emitting devices.  Given that Plaintiff has already filed and voluntarily

3    dismissed a related lawsuit—making the complaint at issue here the substantive equivalent of an

4    amended complaint—and given that Plaintiff has not proposed additional facts that might cure the

5    deficiencies identified in Defendants' motion to dismiss, the undersigned recommends that leave

6    to amend not be granted.

7              I.        Background and Procedural History

8              Plaintiff has for years advocated for the Food and Drug Administration ("FDA") and the

9    National Highway Transportation Safety Administration ("NHTSA"), both defendants in this

10   action, to regulate LED headlights, also referred to as "headlamps."  The Soft Lights Foundation,

11   of which Plaintiff is the founder and president, submitted multiple citizen petitions to the FDA

12   seeking such regulations.  ECF No. 1 at ¶ 26.  In a "Final Response Letter" issued in response to

13   four of those petitions, the FDA denied, *inter alia*, the Foundation's request that the FDA

14   "regulate electromagnetic radiation in the visible portion of the spectrum emitted by products that

15   use [LEDs] and that these regulations set restrictions on spatial non-uniformity, chip-level peak

16   luminance and peak radiance, spectral power distribution, and square wave flicker to protect the

17   physical and psychological health, safety, comfort, and civil rights of those who are negatively

18   impacted by LED light."  ECF No. 9-2 at 2.[1]  The FDA denied similar requests as to pulsing,

19   flashing, and strobing LEDs, as to LEDs "that are used on vehicles," and as to LED street lights.

20   *Id*. at 3.  The FDA provided several reasons for denying the requests, including that (1)

21   "regulations for specific performance standards for every type of electronic product" are not

22   "necessary given the effectiveness of existing mitigations in addressing unnecessary radiation and

23   alternative approaches to protect public health" and "the fact that most products do not produce

24   types of levels of unnecessary radiation that pose a risk to public health"; (2) specific standards

25   _____

26   [1]  Plaintiff discusses those petitions and the agency's response letter in the complaint in this case.
     ECF No 1 at ¶¶ 25-27.  The Court deems them incorporated by reference. *See Khoja v. Orexigen*
27   *Therapeutics, Inc*., 899 F.3d 988, 1002-1003 (9th Cir. 2018).  Even if not incorporated by
     reference, they would be subject to judicial notice, for the reasons described by Defendants.  ECF
28   No. 9-1 at 2 n.1.

                                           2

1    for LEDs are not necessary "due to their long history of safety with respect to the visible

2    wavelengths being emitted," and (3) the Soft Lights Foundation had provided insufficient

3    evidence that the requested standards are necessary.  *Id*. at 6-7.

4           Plaintiff also sent a letter and email to the NHTSA regarding that agency's regulation of

5    LED headlamps.  ECF No. 1 at ¶ 28.  NHTSA responded in a letter—logged as Interpretation

6    571.108-NCC-230201-001, LED Headlights—explaining that "LEDs are allowed to be used as a

7    light source in integral beam headlamps as long as the headlamp conforms to all applicable

8    headlamp requirements in" the agency's headlamp regulation, known as Standard No. 108, 49

9    C.F.R. § 571.108.  Interpretation 571.108-NCC-230201-001, LED Headlights (Feb. 13, 2024).[2]

10   NHTSA acknowledged the problem of consumers' illegal replacement of headlamp bulbs with

11   after-market LED bulbs, but noted that NHTSA "generally does not regulate modifications

12   individuals make to their own vehicles," which instead is a matter "left to State law to address[.]"

13   *Id*.

14          On September 23, 2024, Plaintiff filed this action, suing the FDA, the NHTSA, officials

15   within each agency, and the Secretary.[3]  Plaintiff alleges that Defendants have failed in their

16   statutory duty to "maintain a liaison on techniques, equipment, and programs for testing and

17   evaluating Visible Light radiation from Light Emitting Diode (LED) vehicle headlamps."  ECF

18   No. 1 at ¶ 1.  Additionally, Plaintiff alleges that the FDA unlawfully dissolved the Technical

19   Electronic Product Radiation Safety Standards Committee (hereafter the "Safety Committee").

20   *Id.*  Plaintiff contends he has suffered injury via eye pain and "neurological and psychological

21   trauma" from being exposed to the LED headlamps and that his injury is redressable because the

22

23   _____

24   [2]  A copy of NHTSA's response letter to Plaintiff is available here: https://perma.cc/M757-7UHF.
     That letter is subject to incorporation by reference or judicial notice for the same reasons that
     apply to the FDA petitions and response letter.

25   [3]  Plaintiff filed an earlier action, *Baker v. FDA, et al.*, 2:24-cv-00278-DC-SCR, that raised

26   similar claims concerning the alleged lack of regulation of radiation in LED light bulbs.  Shortly
     after the hearing on a motion to dismiss that action, Plaintiff moved to voluntarily dismiss it.

27   That same week, he filed the instant Complaint.  The two cases were related.  *See* Case No. 2:24-
     cv-00278-DC-SCR, ECF No. 24.  The Court granted voluntary dismissal in the prior action, and

28   the Court never adjudicated Defendant's motion to dismiss in that action.

1  FDA could be ordered to reconstitute the Safety Committee and to maintain a liaison to address

2  health and safety impacts of LED vehicle headlamps. *Id*. at ¶¶ 18-19.

3         On December 3, 2024, Defendants moved to dismiss the action, arguing that Plaintiff

4  lacks standing and fails to state a claim. ECF No. 9-1. The motion is fully briefed and was

5  submitted without oral argument.

6         **II.    Legal Standards**

7             **A. Motion to Dismiss Under Rule 12(b)(1)**

8         A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over the

9  action. Such a jurisdictional challenge can be either facial or factual. *Leite v. Crane Co*., 749

10  F.3d 1117, 1121 (9th Cir. 2014). "A facial attack accepts the truth of the plaintiffs allegations but

11  asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.*, citing *Safe Air*

12  *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If a facial challenge is made, the

13  court draws all reasonable inferences based on the plaintiff's allegations. *See Williams v. A&M*

14  *Bros, LLC*, 2023 WL 4747481 at *2 (E.D. Cal. July 25, 2023) (citation and quotation omitted).

15  By contrast, in a factual attack, the challenger disputes the truth of plaintiff's factual allegations,

16  usually by introducing evidence outside the pleadings. In resolving a factual attack on

17  jurisdiction, the court may review evidence beyond the complaint and resolve factual disputes

18  itself. *Id.* at 1121-22.

19            **B. Motion to Dismiss under Rule 12(b)(6)**

20         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

21  sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

22  1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

23  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

24  F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

25  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

26  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

27  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

28  *Iqbal*, 556 U.S. 662, 678 (2009).

1    In determining whether a complaint states a claim on which relief may be granted, the

2    court accepts as true all well-pleaded factual allegations in the complaint and construes the

3    allegations in the light most favorable to the plaintiff.  *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082,

4    1086 (9th Cir. 2020).  However, the court need not assume the truth of legal conclusions cast in

5    the form of factual allegations.  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

6    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

7    unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

8    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

9    elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

10   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

12   facts that it has not alleged or that the defendants have violated the ... laws in ways that have not

13   been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

14   U.S. 519, 526 (1983).

15   **III.    Statutory and Regulatory Background**

16   Plaintiff challenges Defendants alleged failures to implement certain provisions of the

17   Radiation Control for Health and Safety Act of 1968, Pub. L. 90-602, 82 Stat. 1173 (Oct. 18,

18   1968), which is codified at 21 U.S.C. §§ 360hh, *et seq*.  This legislative scheme applies to

19   "electronic product[s]" that are defined to include:

20       (A) any manufactured or assembled product which, when in operation, (i) contains
21       or acts as part of an electronic circuit and (ii) emits (or in the absence of effective
    shielding or other controls would emit) electronic product radiation, or
    (B) any manufactured or assembled article which is intended for use as a component,
22       part, or accessory of a product described in clause (A) and which when in operation
    emits (or in the absence of effective shielding or other controls would emit) such
23       radiation;

24   21 U.S.C. § 360hh(2).  As Defendants note, "[i]n practical terms, this broad definition

25   encompasses nearly any product that is powered by electricity, because all such devices can emit

26   an electromagnetic field."  ECF 9-1 at 8.

27   Section 360ii(a) provides that the Secretary of Health and Human Services "*shall* establish

28   and carry out an electronic product radiation control program designed to protect the public health

and safety from electronic product radiation. As a part of such program, he *shall*—

(1) *pursuant to section 360kk of this title, develop and administer performance standards for electronic products*;

(2) plan, conduct, coordinate, and support research, development, training, and operational activities to minimize the emissions of and the exposure of people to, unnecessary electronic product radiation;

(3) maintain liaison with and receive information from other Federal and State departments and agencies with related interests, professional organizations, industry, industry and labor associations, and other organizations on present and future potential electronic product radiation;

(4) study and evaluate emissions of, and conditions of exposure to, electronic product radiation and intense magnetic fields;

(5) develop, test, and evaluate the effectiveness of procedures and techniques for minimizing exposure to electronic product radiation; and

(6) *consult and maintain liaison with the Secretary of Commerce, the Secretary of Defense, the Secretary of Labor, the Atomic Energy Commission, and other appropriate Federal departments and agencies on (A) techniques, equipment, and programs for testing and evaluating electronic product radiation, and (B) the development of performance standards pursuant to section 360kk of this title to control such radiation emissions*."

21 U.S.C. § 360ii(a)(1)-(6) (emphasis added).  This last subparagraph, § 360ii(a)(6), is the basis for Plaintiff's first claim.

With respect to performance standards, "[t]he Secretary *shall* by regulation prescribe performance standards for electronic products to control the emission of electronic product radiation from such products *if he determines that such standards are necessary for the protection of the public health and safety* …" and "*may* prescribe different and individual performance standards, *to the extent appropriate and feasible*, for different electronic products so as to recognize their different operating characteristics and uses."  21 U.S.C. § 360kk(a)(1)-(2) (emphasis added).  "The Secretary *shall* establish a Technical Electronic Product Radiation Safety Standards Committee . . . which he *shall* consult before prescribing any [performance] standard under [§ 360kk]."  21 U.S.C. § 360kk(f)(1)(A).  "The [Safety] Committee may propose electronic product radiation safety standards to the Secretary for his consideration."  *Id*. § 360kk(f)(1)(B). This subparagraph concerning the Safety Committee is the basis for Plaintiff's second claim.

The FDA's regulations implementing this statutory scheme are set out at 21 C.F.R. §§

6

1    1000.00, *et seq*. (Chapter I, Subchapter J of Title 21).  The electronic products subject to

2    regulation include products that emit "x-rays or other ionizing electromagnetic radiation,"

3    electrons, neutrons, and other particulate radiation," "ultraviolet, visible, infrared, microwaves,

4    radio and low frequency electromagnetic radiation," "coherent electromagnetic radiation

5    produced by stimulated emission," and "infrasonic, sonic, and ultrasonic vibrations resulting from

6    operation of electronic circuit." 21 C.F.R. § 1000.15.  Examples of such products include

7    television receivers, x-ray machines, black light sources, white light devices, remote control

8    devices, cauterizers, burning and welding devices, communications transmitters, vibrators, and

9    diagnostic and nondestructive testing equipment.  *Id.*

10        The regulations contain specific performance standards for certain types of radiation-

11    emitting electronic products.  For example, there are specific performance standards for television

12    receivers, diagnostic x-ray systems, radiographic equipment, fluoroscopic equipment, computed

13    tomography equipment, cabinet x-ray systems, microwave ovens, laser products, sunlamp

14    products and ultraviolet lamps intended for use in sunlamp products, and high-intensity mercury

15    vapor discharge lamps.  21 C.F.R. §§ 1020.10-1020.40, 1030.10, 1040.10-1040.30.  There are no

16    specific performance standards for LED lights generally or LED headlamps specifically.

17        **IV.    Analysis**

18            **A. Standing – Rule 12(b)(1) Motion to Dismiss**

19        Defendants' first argument for dismissal is that Plaintiff lacks standing because he cannot

20    establish that his injuries are traceable to Defendants' conduct or redressable.  ECF No. 9-1 at 13.

21    Defendants state that Plaintiff contends he was injured by exposure to LED headlights, but not

22    that the government exposed him to such headlights; rather, he alleges government inaction failed

23    to prevent the exposure.  *Id.* at 14.  Defendants argue that Plaintiff has not plausibly alleged how a

24    liaison between the FDA and the NHTSA concerning LED headlamps would have reduced his

25    exposure.  *Id*. at 14-15.  Defendants contend that it is mere speculation that liaising between the

26    FDA and NHTSA would have led  the agencies to agree with Plaintiff or take some action to

27    remedy his alleged injury.  *Id.* at 15.  Moreover, Defendants point out that they have already

28    rejected Plaintiff's request for LED regulation in response to his citizen petitions.  *See* Section II,

7

1    *infra*.  As Defendants reason, neither the required liaison nor the constitution of the Safety

2    Committee would be likely to change their decision not to regulate LEDs in the manner Plaintiff

3    requests, further showing that redressability is lacking.  ECF No. 9-1 at 15-16.

4              Plaintiff's response argues that he was injured by LED vehicle headlamps.  He states that

5    he first recalls it happening in 2015 with Cadillac headlights, which his psychological reaction to

6    "was a feeling of evil, an emotion that Plaintiff had never felt before."  ECF No. 10 at 3.  Plaintiff

7    claims the lights have a "photobiological, neurological, psychological and hormonal effect" and

8    caused him to suffer a catastrophic mental breakdown.  *Id.*

9                          **1.  General Standing Requirements**

10             "To establish [Article III] standing, a plaintiff must show it has suffered an 'injury in fact,'

11   that the injury is 'fairly traceable' to the conduct at issue in the plaintiff's claim, and that 'it is

12   likely, as opposed to merely speculative, that the injury will be redressed by a favorable

13   decision.'"  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th

14   Cir. 2018) ("*Exp.-Imp. Bank*") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

15   *Inc.*, 528 U.S. 167, 180–81 (2000).  "[I]t is more difficult to establish causation or redressability

16   in situations where 'a plaintiff's asserted injury arises from the government's allegedly unlawful

17   regulation (or lack of regulation) of *someone else*.'"  *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504

18   U.S. 555, 562 (1992)) (emphasis in original).  Moreover, "[t]he causation requirement also rules

19   out attenuated links—that is, where the government action is so far removed from its distant

20   (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing."  *Food*

21   *& Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

22             If Plaintiff's standing in this case turned on these generic principles, it is likely that

23   causation and redressability would be lacking.  The defendant agencies have each independently

24   declined to promulgate Plaintiff's requested regulations.  It is speculative to believe they would

25   change course if the Court were to order them to confer with each other on LED regulation or to

26   order the FDA to reconstitute the Safety Committee.  However, as explained below, Plaintiff's

27   claims are governed by the relaxed standing requirements of the "procedural rights" doctrine.

28   The Court accordingly examines Plaintiff's standing under that doctrine.

1                     **2.  "Procedural Rights" Standing**

2              Defendants argue the "procedural rights" doctrine does not apply to this case.  ECF No. 9

3       at 12.  As Defendant reasons, "the statutory provisions at issue in Counts I and II—specifically,

4       21 U.S.C. §§ 360ii(a)(6)(A) and 360kk(f)(l)(A)—do not 'accord[] [Plaintiff] a procedural right to

5       protect [his] concrete interests.'"  *Id*. at 12-13 (quoting *Douglas Cnty. v. Babbitt*, 48 F.3d 1495,

6       1500 (9th Cir. 1995)).  "Nor were his interests 'threatened by' the government's conduct."  *Id*.

7       (quoting *Douglas Cnty.*, 48 F.3d at 1500).  Plaintiff does not squarely engage with procedural

8       rights case law, but explains why the relief he seeks could redress his injuries.  ECF No. 10 at 4-5.

9                  **a.  Background on the Procedural Rights Doctrine**

10             "Plaintiffs bringing procedural-rights claims can establish standing without meeting all the

11      normal standards for redressability … Specifically, a plaintiff pursuing violations of procedural

12      rights need not establish the likelihood that the agency would render a different decision after

13      going through the proper procedural steps."  *Exp.-Imp. Bank*, 894 F.3d at 1012.  Rather, "under

14      the relaxed redressability standard for procedural-injury cases," a plaintiff need "only [] show that

15      further [] consultation *may* influence the agency's ultimate decision of whether to take or refrain

16      from taking a certain action.  This is not a high bar to meet."  *Ctr. for Biol. Diversity v. U.S.*

17      *Bureau of Land Mgmt.*, 141 F.4th 976, 1011 (9th Cir. 2025) (citations and quotations omitted).

18             The causation inquiry is also "relaxed in cases involving procedural injuries," but "only in

19      the sense that a plaintiff need not establish the likelihood that the agency would render a different

20      decision after going through the proper procedural steps."  *Id*. at 1008 (citation and quotations

21      omitted).  In a procedural rights case, "[t]he causation requirement is satisfied by showing a

22      reasonable probability of the challenged action's threat to [the plaintiff's] concrete interest."

23      *Nat'l Family Farm Coal. v. U.S. EPA*, 966 F.3d 893, 910 (9th Cir. 2020) (citations and quotations

24      omitted).

25                      **b.  This is a Procedural Rights Case**

26             The Court first addresses the threshold question of whether this is a procedural rights case.

27      Defendants' position is that § 360ii(a)(6)(A) and § 360kk(f)(l)(A) "do not 'accord[] [Plaintiff] a

28      procedural right to protect [his] concrete interests.'"  ECF No. 9-1 at 12-13 (quoting *Douglas*

                                              9

1  *Cnty.*, 48 F.3d at 1500). However, an agency's failure to engage in inter-agency consultation in

2  the course of administrative decision-making is a circumstance to which the relaxed procedural

3  rights standing doctrine applies. *See Ctr. for Biol. Diversity*, 141 F.4th at 1007 (applying relaxed

4  procedural rights standing doctrine where the plaintiffs alleged that the defendant agency violated

5  § 7 of the Endangered Species Act ("ESA") "by not consulting with" coordinate agencies on how

6  a gas and oil project's "carbon emissions might affect protected species and their critical habitat"

7  prior to approving that project).[4] Moreover, as *Douglas County* notes, the Supreme Court's

8  seminal standing decision in *Lujan* recognizes two categories of procedural rights cases: (1) those

9  where a statute expressly confers the procedural right, as with the citizen-suit provisions of the

10  ESA, "which allow certain persons to sue and thus gives them a procedural right to ensure that

11  statutory procedures are followed," and (2) those where people in close proximity to an alleged

12  harm "have 'concrete interests' that give them the right to insure [sic] that agencies follow correct

13  procedures." *Douglas Cnty.*, 48 F.3d at 1500 n.4 (citing *Lujan*, 504 U.S. at 572 & n.7). This case

14  falls into the second of those categories. Plaintiff alleges in detail the manner in which his well-

15  being is harmed by unregulated LED lights. Those health harms constitute a concrete interest,

16  and one that he ties to Defendants' alleged failures to implement § 360ii(a)(6)(A) and §

17  360kk(f)(l)(A). The procedural requirements imposed by § 360ii(a)(6)(A) (inter-agency

18  consultation) and § 360kk(f)(l)(A) (constitution of the Safety Committee), when read together in

19  the context of Plaintiff's complaint, demonstrate that a relaxed standing inquiry is appropriate

20  here.

21  **c.  Application of Procedural Rights Doctrine to Plaintiff's Claims**

22  The Court now turns to analyzing Plaintiff's standing under each claim. *See*

23  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (a plaintiff must establish standing for

24  "each claim" and "each form of relief"). Defendants do not contest that Plaintiff's allegations of

25  health harms from LED lights satisfy the injury-in-fact requirement. Plaintiff's standing therefore

26

27  [4] "Section 7 [of the ESA] requires federal agencies to ensure that none of their activities ... will jeopardize the continued existence of listed species or adversely modify a species' critical

28  habitat." *Karuk Tribe v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012) (en banc).

1    turns on causation and redressability.  As to both aspects of standing, Plaintiff effectively argues

2    that if FDA and NHTSA were forced to consult with one another on LED regulation, and if the

3    Safety Committee were properly constituted, Defendants could then decide to regulate LED

4    lights, alleviating his harm.  As explained below, Plaintiff has standing to pursue his first claim,

5    but lacks standing as to his second claim.

6         As to causation, Plaintiff explains in detail in his pleadings and documents incorporated

7    by reference the manner in which unregulated LED lights have harmed him, including with

8    reference to concrete health harms.  He has therefore shown "a reasonable probability" that

9    Defendants' failure to regulate threatens his "concrete interest" in his own well-being.  *Nat'l*

10   *Family Farm Coal.*, 966 F.3d at 910.  While motorists who use LED headlamps directly harmed

11   Plaintiff, given that the agencies' regulatory mandates plainly encompass LED lights, this is not a

12   case where "an injury caused by a third party is too tenuously connected to the [omissions] of the

13   defendant."  *Citizens for Better Forestry v. U.S. Dep't of Agriculture*, 341 F.3d 961, 975 (9th Cir.

14   2003); *see also Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1518 (9th Cir. 1992)

15   ("The causation question concerns only whether plaintiffs' injury is dependent upon the agency's

16   policy, or is instead the result of independent incentives governing [a] third part[y's]

17   decisionmaking process.").

18        Plaintiff has also established redressability as to his First Cause of Action (failure to consult

19   and liaise in violation of § 360ii(a)(6)(A)).  Defendants point out that the defendant agencies have

20   already independently declined to regulate in this area, despite Plaintiff's prior petitions.  ECF No.

21   9-1 at 7.  While that point is well taken, the consultation that Plaintiff believes is required by law

22   could well result in a different outcome.  That is particularly true where Plaintiff has submitted

23   additional petitions and supporting materials that have not yet been evaluated by the defendant

24   agencies.  Plaintiff also highlights that NHTSA never engaged in a rulemaking process for LED

25   vehicle headlamps, suggesting consultation with FDA might lead to such rulemaking.  These

26   circumstances all show that the injury Plaintiff complains off may be redressable through judicial

27   action, which is all that is required under the applicable relaxed redressability inquiry.  *See Friends*

28   *of the Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 919-920 (9th Cir. 2018)

1    ("plaintiffs need only show a *reasonable probability* that the Corps' decision *could be influenced*

2    by the environmental considerations that NEPA requires an agency to study") (citations and

3    quotations omitted and emphasis added); *see also Citizens for Better Forestry*, 341 F.3d at 976

4    (finding the plaintiff had met their "relatively easy burden" where "it is *probable* that if USDA had

5    allowed Citizens to participate in its environmental review at some point, or had complied with the

6    ESA formal consultation requirement, this *could have influenced* its decision" on a proposed rule)

7    (emphasis added).

8         However, Plaintiff fails to show redressability for his Second Cause of Action (disbanding

9    the Safety Committee in violation of § 360kk(f)(l)(A)).  Construing that cause of action in the

10    light most favorable to Plaintiff, it is a claim that the Secretary has failed to maintain the Safety

11    Committee at full strength as required by law.[5]  For example, Plaintiff alleges that the Safety

12    Committee has only four members, where by statute it should have fifteen members.  But even if

13    the Court were to ultimately order the Secretary to appoint additional members, that would not

14    make it reasonably probable that such additional members could influence Defendants decision

15    whether to regulate LED lights specifically.  The possibility that the additional members would

16    recommend LED regulation is too speculative to meet the redressability requirement, even under

17    the relaxed standards of the procedural rights doctrine.  Plaintiff lacks standing to pursue his

18    Second Cause of Action.  Having determined that Plaintiff has standing to pursue his First Cause

19

20    [5] Substantively, this would be the strongest footing for Plaintiff's claim, as there is no other
statutorily-required action as to the Safety Committee that the Secretary has not undertaken.  For
21    example, § 360kk(f)(1)(A) provides that "[t]he Secretary shall establish a Technical Electronic
Product Radiation Safety Standards Committee . . . which he shall consult before prescribing any
22    [performance] standard under [§ 360kk]."  But Plaintiff does not allege that the Secretary did not
establish the Safety Committee.  Nor does Plaintiff allege that the Secretary has not consulted
23    with the Safety Committee before prescribing specific performance standards.  Moreover, while
Plaintiff claims the Safety Committee was unlawfully dissolved, judicially noticeable documents
24    refute that allegation.  The FDA renewed the Safety Committee's charter in January of 2023.  *See*
Notice; Renewal of Federal Advisory Committee, 88 Fed. Reg. 4190-01, 2023 WL 359066 (Jan.
25    24, 2023).  In so doing, the FDA reiterated that the Committee "provides advice and consultation"
to FDA "on the technical feasibility, reasonableness, and practicability of performance standards
26    for electronic products to control the emission of radiation from such products."  *Id.*  Nor has
Plaintiff plausibly alleged that the Safety Committee cannot consult with the FDA even when it is
27    not fully constituted; the statute contains no express quorum requirement.

28

1    of Action, the Court will now proceed to the analysis under Rule 12(b)(6) of whether Plaintiff has

2    stated a claim.

3                    **B.  Review of Agency Inaction – Rule 12(b)(6) Motion to Dismiss**

4               The APA provides for review and a remedy when an agency fails to act: "The reviewing

5    court shall ... compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. §

6    706(1).  To state a claim under 706(1), a plaintiff must plausibly allege "that an agency failed to

7    take a discrete action that it is required to take."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55,

8    64 (2004).  "A court can compel agency action . . . only if there is a specific, unequivocal

9    command placed on the agency to take a discrete agency action, and the agency has failed to take

10   that action."  *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016)

11   (internal marks and citation omitted).  "The agency action must be pursuant to a legal obligation

12   so clearly set forth that it could traditionally have been enforced through a writ of mandamus."

13   *Id.* at 1075-76 (citation and quotation omitted).

14              Section 360ii(a)(6) provides that the Secretary "shall … consult and maintain liaison with

15   the Secretary of Commerce, the Secretary of Defense, the Secretary of Labor, the Atomic Energy

16   Commission, and other appropriate Federal departments and agencies on (A) techniques,

17   equipment, and programs for testing and evaluating electronic product radiation, and (B) the

18   development of performance standards pursuant to section 360kk of this title to control such

19   radiation emissions."  Plaintiff claims that the FDA violates this statute by failing to consult with

20   the NHTSA on the developing of performance standards for LED lights.  Plaintiff reasons that

21   because LED headlamps "emit electromagnetic radiation," ECF No 1. ¶ 62, the statute effectively

22   requires FDA to "consult and maintain [a] liaison" with NHTSA specifically "for LED vehicle

23   headlamps," *id*. ¶ 66.  In basic terms, Plaintiff contends that FDA and NHTSA must consult and

24   liaise on LED headlamps simply because those products "emit electromagnetic radiation."  *Id*. ¶

25   62.  Plaintiff accordingly concludes that the agencies' failure to liaise on this subject constitutes

26   "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1).

27              Contrary to Plaintiff's reading, 21 U.S.C. § 360ii(a)(6)(A) does not contain a discrete,

28   mandatory directive for FDA to act with respect to any specific type of radiation-emitting

13

1    product, such as LED lights generally or LED headlamps specifically.  Section 360ii(a)(6)(A)

2    contains only a broad, generalized requirement that FDA "shall . . . consult and maintain liaison

3    with . . . appropriate Federal departments and agencies on techniques, equipment, and programs

4    for testing and evaluating electronic product radiation."  *Id.*  The FDA has, in fact, consulted with

5    federal agencies.  For example, Defendants show that the FDA consulted with the Federal

6    Communications Commission on standards related to "wireless power transfer" devices.  ECF 9-1

7    at 29 n.8.  As Defendants succinctly point out, "[w]hile Plaintiff is correct that the statute contains

8    a 'non-discretionary' requirement, he is mistaken about the nature and scope of that requirement."

9    *Id*. at 29 (citations omitted).

10        Other statutory provisions demonstrates that Congress did not require the FDA to engage

11   in the regulation of LED lights specifically.  For example, 21 U.S.C. § 360jj(a)(1)(c) requires the

12   FDA to study potential regulation of x-ray technology.  By showing that Congress directed

13   regulation of specific products when it so intended, this statute supports the idea that Congress

14   did not intend to create product-specific requirements under § 360ii(a)(6).  ECF No. 9-1 at 29

15   (citing *Marietta Memorial Hospital Employee Health Benefit Plan v. DaVita Inc*., 596 U.S. 880,

16   887 (2022) ("Congress knew how to write such a law," but it "did not do so in this statute"), and

17   *City of Arlington, Tex. V. F.C.C*., 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain

18   terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency

19   discretion.")).

20        Reviewing the context and overall scheme of the statute, as the Court is required to do,

21   Plaintiff's argument is even more implausible.  Plaintiff's reading would arguably require the

22   FDA to engage in inter-agency consultations for each of the innumerable everyday electronic

23   products that emit radiation.  This reading would be irreconcilable with § 360kk(a), which gives

24   the FDA discretion to publish performance standards for electronic products only if it deems them

25   "necessary for the protection of the public health and safety."  This kind of relatively broad

26   discretion is incompatible with an argument that the FDA violates the law by failing to consult

27   and liaise on LED lights specifically.

28   ////

### C. Leave to Amend

A pro se litigant like Plaintiff is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012). Plaintiff filed the complaint in this case shortly after moving to voluntarily dismiss a related case in the wake of a hearing on the defendants' motion to dismiss in that case. *See supra* n.3. That case also concerned the FDA's failure to regulate LED lights, included similar causes of action as set out in this case, and included several of the same defendants. The complaint in the instant case is in substance an amendment of the complaint in that earlier case, which narrowed the scope of Plaintiff's causes of action while adding the NHTSA defendants. The fact that Plaintiff has now filed two similar actions counsels against further amendment. Moreover, Plaintiff has not suggested facts in opposition that would cure the defects identified in Defendants' instant motion to dismiss. For these reasons, further amendment would be futile.

### V.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss (ECF No. 9) be GRANTED without leave to amend; and

2. The Clerk be directed to enter judgment and close this file.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen days** after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 16, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

15